# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH PROUT,** | : | **Civil No. 3:12-CV-2472** |
| | : | |
| **Plaintiff,** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PUBLIC DEFENDER GEORGE** | : | |
| **MARGETAS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case.

Joseph Prout remains an enigma, an enigma whose legal claims are a riddle shrouded in mystery.  Prout describes himself as "[a] natural freeborn sovereign individual" and as a person who is "not a fictitious corporation entity or surety for an enslegal [sic] entity or public holder, using any fraudulent government created upper case name." (Doc. 1.)  Prout is also a state prisoner who is currently challenging a May 2012 state conviction for offenses arising out of the petitioner's alleged forgery of a prescription for pain killing controlled substances.

On December 11, 2012, Prout, who is proceeding *pro se*, commenced this civil action by filing a complaint with the United States District Court for the Middle District of Pennsylvania.  (Doc. 1.)  In his initial *pro se* complaint, Prout  named as defendants the police officer who arrested him, the public defender who represented

him in this state case, the state judges who presided over this case, and the state prosecutors who prosecuted this case.

Prout's complaint, which he brought "In Admiralty", then contained a series of bizarre allegations, many of which have the quality of things that are more imagined than real. For example, Prout insisted that the Pennsylvania crimes code is invalid because it was inconsistent with something he refers to as the Constitution of 1776. Prout also asserted that: "America has been under an evolving military occupation since 1871, as evidenced by the flag that is flown around the nation pretending to be the American flag." (Id.) On the basis of this odd collection of claims and assertions, Prout's complaint then sought to set aside his state conviction and demanded damages of $300,000 from the defendants a sum that Prout insisted was compelled by the "first maxim of COMMERCIAL LAW UCC." (Id.)

Along with this complaint, the plaintiff has filed a motion for leave to proceed *in forma pauperis*. (Doc. 5.) We granted this motion for leave to proceed *in forma pauperis*, but as part of our legally mandated screening process for *pro se, in forma pauperis* complaints, we recommended that the court dismiss this complaint for failure to state a claim upon which relief can be granted without prejudice to allowing the plaintiff one final opportunity to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

Prout has now filed an amended complaint "in admiralty", (Doc. 13.), which has been remanded to us for our consideration. (Doc. 14.) This amended complaint repeats and re-states Prout's legally flawed and factually bankrupt claims that Pennsylvania's entire criminal code is invalid, and that the United States is enduring a 140 years covert military occupation which is symbolized by the gold fringe on the American flag. On these basis of these renewed, and eccentric, claims, Prout sues an entity which does not exist–"Commonwealth of York County Corporation"– seeking to have his state conviction set aside. (Doc. 13.)

As set forth below, this amended complaint continues to fail on numerous grounds to state a claim upon which relief may be granted. Therefore, it is now recommended that the amended complaint be dismissed with prejudice.

## II. <u>Discussion</u>

### A. <u>Screening of *Pro Se* Prisoner Complaints–Standard of Review</u>

This court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints filed by prisoners who seek leave to proceed *in forma pauperis* which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.

## B. Prout's Amended Complaint Should Be Dismissed With Prejudice

Judged against these legal benchmarks, Prout's *pro se* amended complaint still runs afoul of several threshold legal obstacles, obstacles which combine to compel dismissal of this complaint in its current form. The flaws in the *pro se* amended complaint lodged by Prout are discussed separately below.

### 1. Prout's Amended Complaint Continues to Fail to Satisfy Basic Pleading Rules

First, these pleadings still violate the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. In addition, dismissal of this complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Dismissal of this amended complaint is appropriate for several reasons. First, the amended complaint often fails to allege facts that would give rise to a plausible claim for relief. In this regard, it is also well-settled that: "[t]he Federal Rules of

Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).

In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects. In this case, Prout was provided such an opportunity but has failed to amend his complaint in a fashion which meets the strictures of Rule 8. Therefore, dismissal of the complaint with prejudice is now warranted. See, e.g., Rhett v. New Jersey State Superior Court, 260

F.App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>. <u>supra</u>; <u>Scibelli v. Lebanon County, supra.</u> Here, Prout's pleadings fail to satisfy these basic minimal pleading standards. Indeed, these pleadings often fail to articulate an intelligible factual narrative thread. Since much of what Prout recites is incomprehensible, we cannot discern what Prout is claiming, and we recognize that these pleadings would leave "the defendants having to guess what of the many things discussed constituted [a cause of action];" <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011), dismissal of this action is fully warranted here.

Furthermore dismissal of this action is also independently justified since "[a] federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so attenuated and unsubstantial as to be absolutely devoid of merit, ... wholly insubstantial, ... obviously frivolous, ... plainly unsubstantial, ... or no longer open to discussion.' <u>Hagans v. Lavine</u>, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (internal citations and quotation marks omitted)." <u>DeGrazia v. F.B.I.</u>, 316 F. App'x 172, 173 (3d Cir. 2009). In this regard, what controls is our assessment regarding whether "the complaint is subject to dismissal because it presents a cause of action that ' "relies on "fantastic or delusional scenarios." <u>Neitzke v. Williams</u>, 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).' <u>DeGrazia v. F.B.I.</u>, 316 F. App'x 172, 173 (3d Cir.2009)." <u>Gilboy v. Mellow</u>, 3:CV-12-1237,

2012 WL 3957977 (M.D. Pa. June 29, 2012) <u>report and recommendation adopted,</u> 3:12-CV-1237, 2012 WL 3959270 (M.D. Pa. Sept. 10, 2012).

In this case, "[t]here is no question that [Prout's] claims meet this standard, as they rely on fantastic scenarios lacking any arguable factual basis." <u>DeGrazia v. F.B.I.</u>, 316 F. App'x 172, 173 (3d Cir.2009). Indeed, in his pleadings, Prout speaks of an imaginary military occupation of this country, which has existed in a clandestine fashion for 143 years, and is secretly symbolized by the gold fringe which decorates the American flag. By any measure, these "allegations . . . 'are so attenuated and unsubstantial as to be absolutely devoid of merit, ... wholly insubstantial, ... obviously frivolous, ... plainly unsubstantial, ... or no longer open to discussion.' <u>Hagans v. Lavine</u>, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (internal citations and quotation marks omitted)." <u>DeGrazia v. F.B.I.</u>, 316 F. App'x 172, 173 (3d Cir. 2009). Therefore, *sua sponte* dismissal of this action is entirely appropriate here pursuant to Rule 12(b)(1).

> **2.      While a State Criminal Case is Pending This Court Should Abstain From Ruling Upon Prout's Claims for Injunctive Relief**

Furthermore, this court should continue to abstain from addressing Prout's requests for injunctive relief while this matter is still being actively litigated in the state courts. To the extent that the complaint invites this court to enjoin a pending

state criminal case, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine. The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title

Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* amended complaint reveals that all of the legal prerequisites for Younger abstention are still present here. First, it is evident that there are on-going state criminal proceedings in this case. Second, it is also apparent that those proceedings afford Prout a full and fair opportunity to litigate the issues raised in this lawsuit in his pending state cases. Finally, it is clear that the state proceedings implicate important state interests, since these matters involve state criminal law enforcement, an issue of paramount importance to the state. See, e.g., Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002). Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound

discretion of this court.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004);  Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

**3.**      **Prout May Not Bring a Federal Civil Rights Action Suing for Damages in a Criminal Case Which Resulted in His Conviction**

In addition, to the extent that Prout seeks damages arising out of his state prosecution, this amended complaint fails because it rests on a fatally flawed legal premise.  At bottom, the plaintiff seeks to bring a civil rights action for damages premised on claims of misconduct in his state case, a case that resulted in a conviction which has not otherwise been set aside or overturned.

This he cannot do.  Quite the contrary, it is well-settled that an essential element of a civil rights action in this particular setting is that the underlying criminal case must have been terminated in favor of the civil rights claimant.  Therefore, where, as here, the civil rights plaintiff brings a claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law.  The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." <u>Heck v. Humphrey</u>, 512 U.S. 477, 483(1994) (quoting <u>Memphis Community School Dist. v. Stachura</u>, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." <u>Heck,</u> 512 U.S. at 483 (quoting <u>Carey v. Piphus</u>, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in <u>Heck</u> to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." <u>Heck,</u> 512 U.S. at 484. Looking to the elements of malicious prosecution, the court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction. <u>Id</u>.

<u>Hector v. Watt</u>, 235 F.3d 154, 155-156 (3d Cir. 2000).

In this case it is evident from the complaint that the plaintiff's prior state criminal case did not terminate favorably for him, since he admits that he was convicted in this state case. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", <u>id</u>., the immutable fact of Prout's conviction presently defeats any federal civil rights claims for damages based upon the conduct of this state case, and compels dismissal of these claims. In short, this amended complaint is based upon the fundamentally flawed legal

premise that Prout can sue state officials for civil rights violations arising out of his state prosecution even though he stands convicted of the crimes charged against him. Since this premise is simply incorrect, Prout's complaint fails as a matter of law.

4. **The Defendant Named in the Amended Complaint– Commonwealth of York County Corporation–is a Legal Nullity That May Not be Held Liable**

Further, in his amended complaint Prout names an entity which does not exist, the Commonwealth of York County Corporation, as the sole defendant. York is not a Commonwealth or a corporation; it is a county. Since Prout's description of the defendant s entirely fanciful, it would be impossible to proceed with this litigation.

In any event, Prout has not pleaded facts which would give rise to a claim of institutional liability against any governmental entity. Local governmental entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). However, a municipality may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. Bd. of County Comm'rs of Bryan County

v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law."  Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'"  Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  Id. at 325 (citations omitted).  In summary, analysis of a claim under Monell requires separate analysis of two distinct issues:  "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation."  Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

A government entity may be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to

a custom of the agency. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To prove agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) municipal lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). The need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for agency liability on a failure-to-train theory, the

alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define agency civil rights liability based upon a failure to train or oversee police. In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city

'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

This is a very exacting standard, and we find that Prout's pleadings plainly have not established a case for institutional liability based upon any lack of training and oversight of the police which rose to the level where it may be deemed deliberate indifference.  Therefore, Prout's efforts at imputing institutional liability to any defendant, whether designated as a commonwealth, county or corproation, simply fail as a matter of law.

We had initially recommended that the plaintiff be given a final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint.  We recommended this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  However, having been

provided with this opportunity to amend his complaint, Prout's amended complaint repeats and compounds factually and legally flawed claims, and plainly fails to state any claim upon which relief may be granted. On these facts, it is now evident that granting further leave to amend would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the court now dismiss this case with prejudice.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint (Doc. 13.),be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of March 2013.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge